UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE WEGERS, et al.,<br><br>Defendants. | CASE NO. CR05-0231C<br><br>ORDER |

This matter comes before the Court on the government's motion for inquiry pursuant to Rule 44(c) and to disqualify defense counsel (Dkt. No. 525). By this motion, the government requests that the Court conduct an inquiry into conflicts of interest resulting from attorney Jeffrey Lustick's representation of Defendant George Wegers in this matter, and of Defendant William James in an on-going matter in state court. The motion further seeks an order, following the inquiry, disqualifying Mr. Lustick from representing Defendant Wegers in this case.

Having carefully considered (1) the papers submitted by all parties, (2) written waivers submitted by both Defendants, (3) the allegations in the indictment, (4) testimony by Defendants at a hearing, (5) the arguments of counsel, and (6) all relevant facts and circumstances, the Court DENIES the government's motion for the following reasons.

ORDER – 1

## I. Relevant Facts and Allegations

Defendant George Wegers is the lead defendant in this prosecution, and is named in six of the thirty-six counts in the First Superseding Indictment ("FSI").[1] He is charged in several different conspiracy counts, including a conspiracy to traffic in motor vehicles and motor-vehicle parts. Wegers is alleged to be the national president of the Bandidos organization, and as such, responsible for principally directing the racketeering enterprise and permitting "other members to engage in criminal activities including . . . the trafficking of motor vehicles and motor vehicle parts." (FSI 5.)

Defendant William Edwin James is alleged to be the secretary and treasurer of the Bandidos chapter in Bellingham, Washington. (*Id.* 7.) He is charged in two of the thirty-six counts in the FSI: Count 16 charges him with possession with intent to sell a motorcycle that had its VIN obliterated or altered, while Count 12 alleges that James's conduct in Count 16 was "committed during and in furtherance of" a larger conspiracy to traffic in motor vehicles and parts. (*Id.* 25–26, 22–23.) Wegers is also named in Counts 16 and 12. (*Id.*)

In March 2005, James was arrested in Bellingham and charged with misdemeanor DUI. (Def.'s Opp'n 1–2.) One month after his arrest, James retained attorney Jeffrey Lustick. (*Id.* 2.) Lustick continues to represent James in the state matter, but asserts that it is currently on "inactive status"; following his arrest in this federal case, James failed to appear in state district court in July. (*Id.* 4.) The state court issued a bench warrant upon James's failure to appear. (*Id.*)

On June 9, 2005, both James and Wegers were arrested by federal authorities and taken to Whatcom County Jail in Bellingham. (Dkt. No. 559-5, at 2.) Lustick attempted to visit James in jail, but was able to speak to James only through the jail's attorney telephone. (*Id.*) James did not request that Lustick represent him in this case. (*See* Dkt. No. 606 [Transcript, or "Tr."] at 15:23–16:11.)

---

[1] These facts are based on the papers submitted by all parties, the allegations, and testimony during the hearing. With the obvious exception of the allegations in the FSI, the parties do not dispute these facts in any material respect.

ORDER – 2

That same day, Lustick spoke to Wegers, who asked whether Lustick would represent him in this case. (Def.'s Opp'n 2.) They discussed Lustick's representation of James in the state matter, as well as the relevant conflict and waiver provisions from the Washington Rules of Professional Conduct. (Dkt. No. 559-4.)

After confirming that Wegers wished to retain him in this matter, Lustick again spoke to James and sought his voluntary waiver of any potential conflict created by Lustick's representation of Wegers in this case. (Def.'s Opp'n 1–2.) They discussed the situations giving rise to adversity between client and attorney and the requirement that the client waive all such conflicts in writing after full disclosure of all material facts. (Dkt. No. 559-5.) James agreed to waive any actual or potential conflicts and consented to Lustick's representation of Wegers in this case. (*Id.*)

The next day, both Wegers and James appeared for their initial arraignment. (*See* Dkt. Nos. 73, 76.) Wegers and Lustick met before the arraignment and discussed Wegers's constitutional right to unconflicted counsel and the waiver requirement when an attorney represents co-defendants in the same or similar matter. (Dkt. No. 559-4.) Lustick then entered his first appearance for Wegers (*id.*), after which Wegers executed a hand-written statement that he knew of Lustick's representation of James's, but that "it [didn't] bother" him and that he continued to want Lustick to represent him in this case. (Dkt. No. 559-3.)

James was arraigned separately that day, without Lustick, and requested appointed counsel. (Dkt. No. 76.) The Court appointed CJA panel attorney Jeffrey H. Smith to represent James; he remains in that capacity to date. Both Defendants were ordered detained and remain so pending trial. In September, both Wegers and James again appeared for arraignment on the superseding indictment. (Pl.'s Reply 2.) Lustick again appeared for Wegers, and Smith for James. (*Id.*)

After communications with Lustick failed to resolve this issue to the government's satisfaction, it filed this motion on October 13. Immediately thereafter, Lustick obtained formal written waivers from both Defendants. (*See* Dkt. Nos. 559-4, 559-5.)

ORDER – 3

## II. Legal Standards and Analysis

### A. *Sixth Amendment Right to Counsel*

Every criminal defendant has a Sixth Amendment right to effective assistance of counsel, which encompasses the right "to be represented by counsel whose loyalties are undivided" by competing duties to other clients. *United States v. Partin*, 601 F.2d 1000, 1006 (9th Cir. 1979), *abrogation on other grounds recognized by United States v. Rewald*, 889 F.2d 836, 858 n.16 (9th Cir. 1989). However, a defendant's right to "a defense conducted by an attorney who is free of conflicts of interest," must be balanced against his "qualified right to be represented by counsel of [his] choice." *Wheat v. United States*, 486 U.S. 153, 159 (1988). When those two interests collide, such as when a defendant's chosen counsel also represents a co-defendant, the Court must "promptly inquire about the propriety of joint representation," and must "take appropriate measures to protect each defendant's right to counsel." FED. R. CRIM. P. 44(c)(2).

To satisfy its duty of inquiry in this case, the Court received full briefing and held a hearing on November 4, attended by Wegers, Lustick, James, Smith, and the United States Attorney. The Court convened the hearing to "address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest," and to provide each Defendant the opportunity "to question the [Court] as to the nature and consequences of his legal representation." *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & n.2 (1984); *accord Partin*, 601 F.2d at 1003–04.

### B. *Presence of Actual or Potential Conflicts of Interest*

To be sure, a defendant's right to unconflicted counsel is distinct from the attorney's ethical obligations to avoid conflicts of interest; however, to determine whether such conflicts exist, the Court turns to the Washington Rules of Professional Conduct. *See Oxford Sys., Inc. v. CellPro, Inc.*, 45 F. Supp. 2d 1055, 1058 (W.D. Wa. 1999). Because all parties agree that Lustick still represents James in the state case, the relevant standard of conduct is Rule 1.7, which requires that an attorney refrain from

ORDER – 4

representing two clients with adverse interests, such that the attorney's representation of either client would be "materially limited" by those conflicting interests. *See* WASH. RULES OF PROF'L CONDUCT R. 1.7(a), (b) [hereafter WRPC].

To pass constitutional muster, however, the representation must avoid not only the prohibition in Rule 1.7 on representations creating *actual* conflicts, *see State v. White*, 907 P.2d 310, 313 (Wash. Ct. App. 1995), but also those giving rise only to *potential* conflicts, *see Wheat*, 486 U.S. at 162–63. First, there is no evidence of an actual conflict of interest created by Lustick's representation of Wegers and James. This is not a case of joint representation in the same matter, and there is no suggestion by either party that James's state case bears any similarities to this matter. More importantly, James is adamant that he has revealed no confidences at all to Lustick, let alone confidences having any relevance to this matter. (*See* Tr. 13:25–14:1; 16:23–25.) Lustick concurs that he has received no such confidences. (*Id.* 9:18–10:2.) Moreover, Lustick has had no communications with James regarding this case, as James assumed from the outset that financial constraints would preclude his retaining Lustick for this matter. (*Id.* 15:23–16:11.)

But even in the absence of actual conflicts, the Court must "tak[e] adequate steps to ascertain" the risk that potential conflicts will manifest and create prejudice. *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). For example, there is the risk that if James accepts a plea and agrees to testify against Wegers, Lustick's divided loyalties might prevent him from effectively cross-examining James. *See United States v. Jeffers*, 520 F.2d 1265, 1265 (7th Cir. 1975). This risk appears remote based on James's and Lustick's consistent statements that they exchanged no confidences. (Tr. 13:25–14:1; 16:23–25.) And based on the Court's colloquy with both Defendants during the hearing, neither Defendant has any reservations about Lustick playing a role in cross-exam. (*See id.* 11:16–12:7; 16:12–16.)

Moreover, Lustick has associated with attorneys from another firm for purposes of representing Wegers at trial; those attorneys have had no involvement with James nor any discussion with Lustick

ORDER – 5

about James's state case, and would likely prepare and conduct any cross-examination if James testifies. (*See id.* 15:13–23.) For similar reasons, there appears to be no risk that Lustick's dual representation would have any impact on the government's ability to negotiate plea agreements with either Defendant. (*See id.* 5:2–6; 9:1–3).

        *C.*      *Knowing and Voluntary Waiver*

The final step in the Court's inquiry is to determine whether both Defendants have knowingly and voluntarily waived their right to be free of potential conflicts, however remote. Such waivers "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *United States v. Allen*, 831 F.2d 1487, 1498 ((quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)) (internal quotes omitted). The Washington rules are in accord, permitting an attorney to engage in dual representation only if "each client consents in writing after consultation and a full disclosure of material facts (following authorization from the other client to make such disclosure)." WRPC 1.7(a), (b).

Based on Wegers's testimony at the hearing, the Court is satisfied that he understands the full range of potential conflicts discussed above, and why those conflicts are a result of his choice to retain Lustick as counsel. (*See* Tr. 10:16–13:6.) Also, Wegers has affirmed that all of his questions have been answered, and that he has had ample opportunity to consult with and retain independent counsel. (*See id.*) The Court has "actively participate[d] in the waiver decision," and finds that Wegers has knowingly and intelligently waived his right to unconflicted defense counsel with full awareness "of the relevant circumstances and the likely consequences" thereof. *Garcia*, 517 F.2d at 278, 276.

The government alleges, however, that James's waiver cannot be voluntary due to Wegers's authority over him in the Bandidos organization, arguing that "it is inconceivable that James would countermand Wegers's desire to retain Lustick." (Pl.'s Reply 1.) The Court will make no assumptions about the structure of the Bandidos' organization or Defendants' respective places therein. However, based on the record and the Court's colloquy with James, the Court is satisfied that James's waiver is not

ORDER – 6

the product of any undue influence. (*See* Tr. 14:5–21.) James is ably represented in this case by independent, unconflicted counsel and has had ample opportunity to consult with his assigned counsel regarding the risks and benefits of waiver under these circumstances. (*See id.* 13:7–14:25.)

**III.    Conclusion**

For the foregoing reasons, the Court is satisfied that both Wegers and James understand the complete range of potential conflicts arising from Jeffrey Lustick's representation of Wegers in this matter and James in the state case. The Court is further persuaded that no actual conflicts are present, and that whatever the risk of potential conflicts, both Defendants have knowingly and voluntarily waived their respective rights to choose alternate, unconflicted counsel. Accordingly, the Court DENIES the government's motion to disqualify Jeffrey Lustick from representing George Wegers in this case.

SO ORDERED this 10th day of November, 2005.

/s/ John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 7